Good afternoon, Your Honors. May it please the Court, Deputy Attorney General Colette Cavalier on behalf of Appellant. This appeal was brought because the District Court erred in granting Boyd's federal habeas petition. Assuming there is a federal liberty interest in parole in California, there was no clearly established federal law that precluded the State Courts from upholding the Governor's decision to deny parole based on the circumstances of Boyd's crime. Thus, the State Courts properly affirmed Governor's decision that Boyd remained a threat to public safety and needed a more lengthy period of incarceration before he could be safely released. Here, the District Court granted relief solely based on this Court's dicta in Biggs and Irons. Irons did not even exist at the time, the State Courts. Let's leave those two cases aside for the moment and let's look at, it seems to me more a series of recent California cases which have spun out with more particularity since Dannenberg what the standard is that's applicable. And it seems to me it would be more useful to talk about the State standard as enunciated in the State Court cases. Well, the State Court cases that have come out recently conflict with the California Supreme Court's decisions in Dannenberg where- You're suggesting that we not give regard to the California Court of Appeals view of California law? Respectfully, Your Honor, federal habeas relief requires that the State Courts misapply federal law. I understand that, but we need a standard. We need to know what the state law is. And for that purpose, it seems that the California Court of Appeals is pretty well positioned to know that. The state law requires that the parole authority review certain factors, the primary factor being the gravity of the commitment offense. And there's other factors- Well, it doesn't say that it's a primary factor. It doesn't say a factor. It's the only factor mentioned in the statute. The regulations go forth and set forth other factors. In Dannenberg, the court said that the parole authority may deny parole up to the maximum term of life as long as the crime is particularly egregious. Here, the crime was particularly egregious, and the state courts looked at the state law, looked at that standard- And it seems that they said- The governor seems to have said it was particularly egregious because he thought there was some evidence that it was premeditated. Yes. Okay. Which essentially means that it could have and should have been a first-degree murder case. It was beyond the minimum necessary for second- All right. So if it were a first-degree murder case, first of all, there was a plea bargain for second-degree murder rather than first-degree murder. Yes. So is there not some tension with the plea bargain cases to say that now we're going to look at, for all purposes, whether it was actually a first-degree murder? No, Your Honor. The governor is entitled to look at the entire facts and circumstances. He is not required to look at the terms of the plea. He can consider any relevant, reliable information. Okay. Second of all, if this were a first-degree murder, he still would have been eligible for parole now, right? He would have been eligible for parole, but- And it wouldn't have been more egregious for being premeditated because premeditated is part of first-degree murder. So he would have been better off if he had not taken the first-degree murder. He would have been eligible for parole, Your Honor, but not entitled to parole. But not, but the governor then could not have relied on there being, on it being particularly serious because premeditated. He could have been, he could have relied, and this is purely speculative because it's not a first-degree murder, on the fact that it was murder committed for financial gain, which would have made it a special circumstance, which would have made it death penalty eligible, but it was not charged or pled as a first-degree murder. The governor merely looked at whether it was the minimum necessary to support the conviction. Counsel, would you accept the proposition that current court of appeals decisions, both state and federal in the Ninth Circuit, seemed to propose the proposition that a first-degree person convicted of any crime and sentenced to California's typical split sentence, X to Y, is entitled to parole upon completing the minimum sentence unless there's some good cause to predict that he personally will be dangerous in the future? The standard is unless the gravity, timing and gravity of the offense is sufficient to suggest that he poses an unreasonable risk of danger, and the factors that the parole authority is to look at include the nature and the facts surrounding the offense. So it's always going to be relevant even past the minimum term. It may weigh less heavily, but that's within the parole authority's discretion. And even under Superintendent V. Hill, the courts don't set aside the parole authority's determination merely because it disagrees about the weight to be given to the evidence. Okay. You didn't really answer the question. The question is, given, as I understand the California law, the recent state cases, it seems to me, have said something similar to what I was saying to you with regard to the first-degree, second-degree murder situation, i.e., whether you can rely in a second-degree murder case on the fact that it's more like a first-degree murder when it could have been charged as a first-degree murder, but wasn't. Isn't there some state court suggesting that that is not a legitimate basis? Court of Appeals I'm talking about now, not the state Supreme Court. I'm not sure I understand your question, but the California Supreme Court clearly addressed this in Rosencrantz and said that the parole authority's review is not limited to the plea, the circumstances surrounding the plea, that they can consider the facts and circumstances of the entire offense. But to the extent that the recent court cases suggested that you must show a current risk of dangerous or a nexus between that crime and their current risk, which I think might be what you're getting at. The state statute that creates any due process or liberty of interest also sets forth the criteria for how the governor goes about determining whether or not there's a current risk of dangerousness. And they look at the crime. They look at the crime. They look at the other factors. They balance them. I understand that, but Dannenberg does set some standard with respect to reliance on the earlier crime. And at some point, it is conceivably possible that there is not substantial evidence of that factor. Are those things at least true? I think that mischaracterizes Dannenberg to some extent. Dannenberg says that you may rely up to and including the maximum term of life as long as the crime is particularly egregious. And that means more than the minimum necessary, which is why we discussed the planning and premeditation elements. So yes, it's always going to be a consideration in this case. And you would take that position even, I mean, it's your position that even if this person had even been charged with first degree murder, what could not be found to have had a particularly serious version of first degree murder, because it's a particularly serious version of second degree murder, he can nonetheless be kept in prison forever, even though he couldn't be if he had been charged with first degree murder. Is that your position? No, I'm sorry. I didn't mean to mislead you at all. The relevant state case law that might be the analogous might be in Ray Van Houten, in which the court looked at a first degree murder and said elements that go to show special circumstances would be relevant in determining whether that's a particularly egregious first degree murder. And if it's a particularly egregious first degree murder, they may be denied basis on the commitment offense alone. Does that answer your question? It's somewhat helpful, but your answer to my question is still essentially yes, because as I understand it, you're pointing out that there is another possibility, which is there could be special circumstances involved. But other than that, I'm not sure I understand it. Our position is that there is no clearly established federal law that prohibits the state courts from upholding the governor's decision in this case, because the governor's required under state law to consider the commitment offense. And there is no Ninth Circuit case or U.S. Supreme Court case which holds that the governor may not ever rely on the commitment offense or when that time may occur. That's true. Well, I mean, I asked you to put aside Biggs, so let's put aside Biggs and let's assume that that's the case. But that isn't the question. There's still a state court law standard that applies here as to which there still has to be substantial evidence for federal purposes. I understand you're contesting that also, but you said you were beginning this argument by saying we're not going there, so let's not go there. So leaving that possibility aside and common ground being that there is a state court, state law standard which Dannenberg describes with respect to reliance on the original offense and which has been spun out in a series of recent court of appeals cases and that there has to be substantial evidence of whatever that standard increment is for federal court purposes, that seems to me what we have to analyze, not simply say anything the governor says is fine. The state courts did look at this case. They examined the sum evidence and they concluded that in accordance with state law, the governor's decision was sufficient and did not violate due process, even applying the sum evidence standard. This was post-Dannenberg in December 2005, I believe it was the California Supreme Court decision. And that's what this court has to look at in determining whether he's entitled to relief under federal habeas law. Not under AEDPA, then, we're looking at whether the state court's decision was an objectively unreasonable application of, I guess it would be Hill and Greenholz. Is that correct? Is that the standard that we're applying? Our position is that the only applicable law is Greenholz, that he's entitled to an opportunity to be heard and a statement of reasons. It's not clear from the Supreme Court authority that the standard set forth in Hill even applies in the parole context because that was a prison disciplinary proceeding. But even assuming that does because the state court applied the state standard, that standard was met here and the state court determination that that standard was met here was not unreasonable. It was not an unreasonable application of Hill and it was not contrary to Hill. Thank you. We'll give you some time for the final question. May it please the Court, Michael Satras on behalf of Dan Boyd. There comes a time when it is fundamentally unfair to deny parole solely on the basis of the offense that got you to prison to begin with. Can I ask you a question about that? Because in reading the California case, it's very troublesome to me. There are basically two general philosophies of punishment. One associated with Immanuel Kant, the idea of retribution and what sometimes is called affirmation of community norms. And the second is the instrumental function that Jeremy Bentham talked about, deterrence of, special deterrence, general deterrence, rehabilitation and where deterrence and rehabilitation cannot be accomplished in capacitation. Now, is it your understanding that the California courts in evaluating the seriousness of the initial offense are not approaching it from the standpoint of retribution, but rather are approaching it from the standpoint of a predictor of future dangerousness? And if that is the case, wouldn't it be necessary, since it's impossible to predict what any individual is going to do, to look to statistical evidence involving the population and compare the future conduct of those convicted of second degree murder with those convicted of first degree murder? I would say certainly looking statistically is one tool to determine the risk presented. What Your Honor talked about in terms of the different purposes of imprisonment is actually discussed in the recent Lawrence case we did cite in our reply brief. But I think the short answer to that question would be the parole suitability determination is only concerned with incapacitation. What you do for retributive purposes, what you do for general deterrence and so forth is determined, again by the parole board, but by the term of imprisonment that they set after you are found suitable for parole. The suitability determination is directly related to questions of dangerousness. So that once you're found suitable for parole, that doesn't mean you get out. And Justice Reinhart talks about this in the Sass dissent. All it means is the prison, the parole authorities will then set a term that takes into consideration the proper punishment and so forth. It may be many years beyond the date. But you began by saying that at some point it becomes fundamentally unfair. But Rosenkrantz, and that's the big idea, essentially. This is the big what? The big idea. Okay. All right. Rosenkrantz seemed to say otherwise. I mean, it seemed to say that a sufficiently egregious manner of committing a crime could be a basis. And this is another way, I guess, of asking what Judge Singleton says. For simply holding the person in prison indefinitely, I suppose on the theory that anybody who could do this is always going to be dangerous. I mean, that would have to be the rationale, right? Well, I don't think Rosenkrantz said that. And that's clear by the fact that the cases that have come out since Rosenkrantz have found that the length of the confinement rendered the determination of unsuitability arbitrary and constrained. Which cases are those? Those are all the State cases that you were talking about. But I thought the State cases really went more to the question of what does Rosenkrantz mean when it says that heinous, callous, egregious, and so on. And it seemed to say that the increment that we're talking about was A, large, and B, had to be, and wasn't simply the heinousness and callousness just inherent to being a murderer to begin with or committing a murder to begin with. And also, at least some of those cases seem to have some problem with what I'm having a problem with, which is whether it's the charge that governs this or whether you look at what, whether he would have been eligible for parole even if he were charged for what, for the increment, which this person would have been. Well, I think that But it doesn't say, but what they don't say, as I understand it, is that there are circumstances in which the egregiousness itself would be grounds for saying this person is always dangerous. I didn't follow all that for some reason. All right. But they don't seem to say The State cases The State cases is what you're saying. They don't seem to focus on the fact, on the big side, on the idea in bigs. And neither did Rosenkrantz or Dannenberg. That issue was never grappled with. Rosenkrantz at the time I actually meant Dannenberg when I was talking earlier. Okay. Rosenkrantz was decided, similar like Sass and Irons and so forth, before the prisoner had served his minimum term or certainly before he had served the term that would be, allow a first-degree murderer to be eligible. And Justice Moreno made the point that Your Honor made the point of, you know, certainly when Rosenkrantz gets to, in his concurring opinion, certainly when Rosenkrantz gets to the point where a first-degree murderer would be eligible for parole, it makes no sense to say he should be denied parole in this case because there was an element of premeditation and deliberation. Focusing and denying parole solely on the basis of the commitment offense particularly subverts the parole process under California's law. Because California reserves the indeterminate life sentence for only the most grave offenders. Everybody else has parole dates set. The problem I'm having is that is not what the California Supreme Court has said in Dannenberg. And I don't, it seems to me that you have a strong enough case if you take Dannenberg for what it says instead of telling us that Dannenberg couldn't do what it did, which is, as I understand it, to say that there are circumstances in which the characteristics of the offense will substantiate a denial of parole and perhaps will do so infinitely, but then it set out some standards which have been elucidated in later court of appeals cases for when that is the case. And it seems to me that what we can most usefully discuss is how those standards apply here and not fight the fact that a, and we certainly can't fight the fact that under California state law there are circumstances in which the original offense is going to carry the day. The question is, is this one of them? Right. And it's up for the parole board to determine those exceptional cases that warrant that conclusion, which can only be made when you look at all of the factors that go into that individual offender's determination of risk assessment. Kind of going back to your Honor's question or point that was made, there is a presumptive entitlement to parole once you have served your minimum term. You come up before the parole board and according to the statute, it directs the parole board, you shall normally set a parole date for the individual. And it provides an exception, a safety valve for those individual cases where you can say, looking at everything about this individual, that setting a date for him would pose an unreasonable risk. So you have parole being the rule and denial of parole the exception. And it is absurd to look at Mr. Boyd in his entirety and determine that he's an exception to the rule for parole for murderers. Because, and we can start with the crime itself, the crime itself is not even. But you know, we're not a state court, obviously. So we have to review it with the deference as required under AEDPA. So how did the state court's determination in this case, how was that an objectively unreasonable application of Supreme Court precedent? Can you address that? Yes. Well, the, it was unreasonable because it made certain findings that were perfectly reasonable and are entitled to deference by this court. Number one, that Mr. Boyd has been a model inmate for more than 20 years and has done everything that anybody could reasonably ask of him to demonstrate his reform and rehabilitation. Excuse me. I meant the governor's decision, which was that there was, there was evidence or that the state court said there was some evidence that the governor's decision, unsuitability decision, that was supporting it. And so why was that decision- Well, what the state court said- An objectively unreasonable application of Supreme Court precedent. Because it did not relate that evidence, which the evidence it found was that there was some suggestion of premeditation. And even if it wasn't there, the crime was more than the minimum conduct that satisfied the minimum elements of the offense. That's what the state court said. And it said, look, there were six bullets fired. So there were essentially, the governor essentially gave one reason, which was premeditation. And the state court essentially gave two. Now, first of all, is this, is there any state law reason why the state court was, was bound by the governor's reasons? Well, that's what the state cases say, Scott and so forth, that the state court has to accept the reasons given by the, by the, by the decision maker and can't make up other reasons, which may not be in the record because for one reason or another, the decision maker may have found that those weren't particularly probative or credible. All right. Do you think the governor relied on the six shots or just on the premeditation? You know, I'd have to go back now and look, but I, I, I would grant that, you know, let's say he did rely on the six shots and certainly the state court did. That is an unreasonable basis to find that Mr. Boyd, that constitutes some evidence that 22 years later, he still presents a risk when, when all of the information is that that crime has become like an historical relic in Mr. Boyd's case because of the change, the reform and rehabilitation he has shown over the course of 22 years since. You have every psychiatric, psychological evaluation for the last 10 years looking at that crime, looking at Mr. Boyd and concluding that he presents a minimal risk, a low risk. In fact, the most recent one for the 2004 hearing was that he presents a risk that's substantially lower than the man on the street. Just because it's, I'd like to know, there was a later denial of, of parole. Right. By the governor. Again, a grant by the board, a denial by the governor. Is there another lawsuit about that? There is. That's making its way up. That's in state court or federal court at this point. In state court. It's in state court. The state court just denied it last week. What can I say? State court appeals at the state court. No. Trial court. Following up on Judge Berzon's question, in your brief you indicate not only has there been subsequent action by the governor, but there's also been a shift in position at one stage by the parole authorities. They did grant parole that was overruled by the governor. They came back and denied it, and then they came back a second time and granted it. 2001, there was a grant of parole by the parole board that was reversed by the governor. At some point then there was a denial of parole by the board. Then there's a second grant of parole by the board that the governor reversed. That's the one that's at issue right now. Then there's a subsequent grant of parole and denial by the governor that's still working its way through state court. If you want to be brought up to date on it, last month he had his new parole hearing. I represented him. There was a deadlock, just like happened in 2001, where now it's going to have to go to the board en banc for a new decision. It's all going back to the pre-commitment factors. His behavior continues to be sterling. He continues to get all the positive psych evaluations. This is the man that under the current law, as the state courts have talked about, could be locked up until he's incapacitated or dies. That is arbitrary and capricious in this case because the offense itself, remember, it was a product of pressure being put upon Mr. Boyd by his drug dealer who he owed money to. We didn't make a point about it in the briefing, but the excerpts of record on page 14 show that the drug dealer pressuring him and threatening him was a member of the Hungarian Mafia. Has anyone, to your knowledge, done a statistical study on the number of men and women convicted of first degree murder or second degree murder or both that have been paroled? Yes, Your Honor, and we actually have submitted that to the, oh, most recently? No, because we don't have a statistically significant number, but historically there has been, and you can see that in... I thought the answer to the question is that while Governor Gray Davis was governor, there were maybe a total of about three people who were paroled under these circumstances, and since Governor Schwarzenegger has been governor, there have been a few more, but almost none. So a miniscule number comparative. Right, but there are statistics, and it's found in Exhibit I in our opposition to the motion for a stay pending appeal that the ironic thing, of course, is that life prisoners who have served the kind of time that we're talking about here, decades of imprisonment, make the best risks on parole, and that's the study of... I thought the question was just how many people are actually paroled under these circumstances. Those statistics... My understanding is that in California, there was a lawsuit about the fact that nobody is ever paroled. Isn't that the problem? They're almost ever paroled. That's the fundamental arbitrariness at issue here, and I'm not aware that there actually may have been a lawsuit at some time, but I don't think any court has grappled with what you really have is an arbitrary disregard of the penal code section that provides for parole being the rule, and those statistics are in Exhibit E, which, as Your Honor indicates, there's also testimony in Exhibit K where the parole board member, Mr. Munoz, concedes that one to two percent of life prisoners who are released on parole end up as recidivists, and I mean, there's just a craziness in the process now where... That could be, theoretically, because they're doing a very good job of figuring out who should be released on parole. I guess that could beg the question, but if you look at Justice Breyer's opinion in... Ninety percent of murderers were released in California under relatively short sentences, and so these statistics of the one to two percent show that that's even the case where you have... Are you aware of a case in which... The standard under Dannenberg is exactly what, or the statute is heinous, callous, and... The regulatory language is especially heinous, atrocious, and cruel. Is there any case in which indices of premeditation of the kind here were considered to have met that standard? A lawsuit? There are cases that have specifically rejected the Governor's finding of a quote-unquote element of premeditation as... As heinous, et cetera. What case is that? That is Weider, for one. Weider, W-I-E-D-E-R. It's cited in our brief, and I think Lawrence also cited in the brief talks about three or four cases where the individual brought a gun to the scene, as in this case, and found that that wasn't sufficient to find that the prisoner at this point presents an unreasonable risk. The Scott case is another case where that was the suggestion. He had brought a gun to the scene of what turned into the homicide. I'm going to stop you in about two minutes, and then I'll give your other counsel extra time as well. It's a very interesting and hard problem. Do you accord any significance to the fact that this was a plea to second-degree murder? It's a plea to second-degree murder? Do you accord any significance to the fact that it was a plea to second-degree murder? I do. Not first-degree murder, and that it was a plea. Well, I don't know whether it makes any difference whether it's a plea or not in the sense it's stronger because the State's own position in this case is that this is a second-degree murder. It's appropriate as a second-degree murder. So that to treat it as something beyond that, namely Well, there's a guilty plea case law that says that the person's entitled to the benefit of their plea, and if he's essentially now being held for being a first-degree murder when he pleaded a second-degree murder, that could be an issue of its own, but you haven't really litigated that. No, we haven't. That was actually litigated in the State court, and it is mentioned in Scott again. I think it colors the fairness and the arbitrariness here, but I mean, you can have an aggravated second-degree murder that has some suggestion of a first-degree murder that doesn't qualify as a first-degree murder or whatever. So I don't see anything wrong personally in going to the facts of the crime when you're assessing the risk that the person is going to present. But what's wrong about it in this case is to isolate those facts and effectively ignore the record of reform and rehabilitation after the prisoner has served his minimum term? I think it's significant that in this case when the board granted Mr. Boyd a date and set a term that was designed to account for deterrence, retribution, and fairness. Remember, this is a remedial statute where you're supposed to get a uniform term set early in your confinement. That's the idea. His term was a parole date of 1997. That's 10 years ago. Thank you very much. Thank you, counsel. I'll give you about five minutes. I think that's about what you have in the bank. Thank you, Your Honor. With respect to the entitlement to a proportionate term, that argument was addressed by the court in Dannenberg, and the court clearly said that it's a two-step process. You have no expectation of any set term until you're found suitable, until the parole authority finds that you will not pose a risk if released. Then and only then does the parole authority go on to say, what should the term be consistent with other second-degree or first-degree murders? So under state law, until you're found suitable, you have no interest in any specific term at all. I wanted to go back and talk about the kind of concept. I know there has been litigation in a case called Coleman, as far as whether the previous administration was biased against parole. That litigation was dismissed as moot, being as that we are now in a different administration. To the extent that those claims are being argued now, those claims were not raised in this litigation below, and have not been exhausted in the state court. Counsel, the thrust of the existing Ninth Circuit law, and it appears just from a cursory evaluation of recent court of appeals decisions, the law of California as well, is that in order to justify overruling the parole board, the governor must have some evidence. But the evidence has to be evidence of something. And is it your contention that the some evidence has to support an inference, however weakly, that a particular person is likely to commit future offenses? He has to continue to pose a risk to public safety, which is a different way of saying the same thing, but that's what the penal code says. More than would be true with regard to the minimum requirements for the conviction of the crime. If you rely on the commitment offense alone. If there are other factors. But here there weren't any. We can agree on that. Here it's a pure question of the commitment offense. And yes, it may be a weak inference. It may be small evidence. It may be not what the court would agree with. But the question is whether there's any evidence in the record to support the governor's decision. And here the state courts looked at it and said, yes, there's a commitment offense. We think that's some evidence. And that decision cannot be set aside merely because the courts disagree with the weight to be given that evidence. The court asked if there any evidence that men and women who commit crimes under circumstances that Boyd, construing the evidence most favorably to the state, Boyd committed his offense, that they're more likely to commit future crimes than average members of the community? There's no evidence in the record because that issue wasn't raised in this petition before. But I think the Supreme Court and Greenholz made clear that you don't have to the parole authority because of the nature of parole authorities. It's predictive, subjective, forward-looking, not adversarial. Those things mean that the parole authority is not required to look at any or point to any specific facts to support its decision to deny parole. But now you're basically contesting our case law, which says the substantial evidence standard with regard to the grant of parole. Is that right? I mean, you're basically going back to the question of whether our case law is consistent with clearly established Supreme Court law. I think it goes to both points. It goes to the point of whether or not there must be some evidence. But it also goes to his question about what do we know about what happens to murderers who are paroled. Because the answer might be we don't know, and that's why it is so hard to specify what evidence must be in the record. The governor is vested with the authority to make these final parole suitability determinations, and he is entitled to be very cautious if he chooses to do so. Okay, I think you are now out of, I think you're out of your five minutes. So thank you very much both for your argument. It's a very interesting case and the argument was very good. The case of Boyd v. Salazar is submitted. We will hear the case of Rodas v. Gonzalez.
judges: Berzon, Ikuta, Singleton (Alaska)